OPINION
{¶ 1} Plaintiff-appellant Janet Presby appeals the decision of the Mahoning County Common Pleas Court, Domestic Relations Division, ordering her to pay defendant-appellee Mark Presby $9,089.16 for half of her accumulated sick leave where such sick leave can never be cashed out but rather can later be used to increase the years of service on her pension, of which defendant-appellee was awarded half through stipulation. For the following reasons, the trial court's decision is reversed, the cash award is vacated, and this case is remanded with instructions that the trial court see to the amendment of the QDRO in order that it utilizes a modified coverture formula.
 STATEMENT OF THE CASE {¶ 2} Janet Presby began working for the United States Postal Authority in October 1983. She married Mark Presby in October 1989. Ms. Presby filed for divorce in January 2003. The parties stipulated that Ms. Presby would be the residential parent and that child support for Ms. Presby would be offset by spousal support for Mr. Presby for eighteen months, after which Ms. Presby could file a motion for court-ordered child support. The parties stipulated to the division of property. For instance, Ms. Presby's pension, the marital portion of which was estimated to be worth over $97,000, was to be divided by a standard coverture fraction at the time of retirement in approximately ten years. After the stipulations, the only issues that remained for trial concerned Ms. Presby's accumulated sick and vacation leave.
 {¶ 3} Regarding vacation leave, testimony established that Ms. Presby carried over the maximum of 440 hours of vacation time annually. When her employment terminates, she can cash in up to 440 hours of vacation time but loses any excess. The court found that 191.25 hours of the accumulated vacation time was marital property. The court multiplied these hours by Ms. Presby's $20.58 hourly rate and concluded that the marital portion of Ms. Presby's accumulated vacation time was $3,935.93. The court thus ordered Ms. Presby to immediately pay Mr. Presby half of this amount. The recitation of facts regarding vacation leave is merely for informational and comparative purposes since Ms. Presby does not raise any issues surrounding the division of vacation time on appeal.
 {¶ 4} Testimony then demonstrated that Ms. Presby's accumulated sick leave can never be liquidated. Rather, as Ms. Presby, a postal human resource specialist, and the expert pension evaluator testified, any sick leave remaining at the time of retirement will be added to her pension, giving her a greater length of service upon which to compute her benefits. (Tr. 32, 58, 115). The expert also testified that any sick leave remaining at retirement will be covered by the coverture fraction in the QDRO.
 {¶ 5} The trial court found that 883.3 hours of Ms. Presby's 1,378.83 hours of sick leave constituted marital property. Like it did for the vacation leave, the court multiplied the marital hours by Ms. Presby's hourly rate of $20.58 and concluded that the marital portion of Ms. Presby's sick leave was $18,230.79. The court thus ordered Ms. Presby to pay Mr. Presby $9,089.16 within ninety days. Ms. Presby filed timely notice of appeal only on the issue of sick leave.
 ASSIGNMENT OF ERROR {¶ 6} Ms. Presby's sole assignment of error provides:
 {¶ 7} "The court erred in placing a present value on the sick leave and awarding the defendant $9,089.16."
 {¶ 8} Ms. Presby argues that giving Mr. Presby cash now for his portion of the sick leave is erroneous since she cannot cash out her sick leave now or later. She distinguishes the Ohio cases that have allowed cash payment to the non-employee spouse for part of the accumulated leave by noting that in those cases, the employee spouse was permitted by the employer to cash out the accumulated leave upon termination, whereas here, she can never cash out her time. Ms. Presby also claims that Mr. Presby will receive his portion later when the pension begins paying out. She characterizes any present cash payment as "double-dipping."
 {¶ 9} Mr. Presby first points out that the last paragraph on page two of the expert's report states that the valuation "does not take into consideration other benefits that may have accrued to Ms. Presby as a result of her employment." He interprets this as meaning that the sick leave was not an asset addressed by the QDRO. Mr. Presby also contends that he should receive cash now for half of the marital portion of the sick leave because the sick leave remaining at her retirement in ten years could be less than it is now. He cites various Ohio cases (distinguished by Ms. Presby) that have affirmed orders to pay a spouse half the value of the sick leave. He claims that waiting for his share is contrary to the purposes of equitable distribution.
 {¶ 10} First, we note that the passage in the expert's report upon which Mr. Presby relies solely refers to how the expert arrived at the pension's present value. The parties agreed to divide the pension based upon a coverture formula at the time of retirement rather than asking for the seldom-used option of paying the present value now. Thus, the statement in the report does not have the meaning that appellee imports to it. Moreover, the expert expressly testified that Mr. Presby will receive the benefit of any remaining sick leave in the coverture formula of the QDRO. (Tr. 115).
 {¶ 11} We also note that some of the cases Mr. Presby cites in support of his position actually held that the value of the accumulated time would not be distributed until the employee receives the pay out from his employer at termination. SeeHerrmann v. Herrmann (Nov. 6, 2000), 12th Dist. No. CA99-01-005, CA99-01-011 (presently determining an amount with which to credit the employee upon future distribution to alleviate concerns that the employee may use her sick leave in the future), citing with approval Pearson v. Pearson, (May 20, 1997), 10th Dist. No. 96APF08-1100 (valuing sick leave as moneyto be distributed in the future upon termination of employment or at the time she received the actual cash value of the sick leave benefit, while retaining jurisdiction to adjust the amount at distribution based upon use of leave).
 {¶ 12} In this case, the leave can never be cashed out. Because of this prohibition, there is no rational reason to value the leave by her hourly rate as the courts do in cash out cases. There was no evidence that the employer's use of any remaining leave to increase the years of service can be valued by using her hourly rate. Hence, we conclude that the trial court should not have ordered a cash pay out for accumulated sick leave where the leave has no cash value to the employee now or later and where the valuation method used by the trial court (multiplying the hours by the employee's hourly rate) has no relation to the value it may have for the employee in the future.
 {¶ 13} However, our analysis cannot stop by merely overturning the cash pay out. Ms. Presby agrees that Mr. Presby is entitled to share in the value of her accumulated sick leave in some way. As the expert noted, the standard coverture formula will give Mr. Presby some benefit from the sick leave in the future; that is, however, if there is any sick leave remaining when Ms. Presby retires. The trial court intended to ensure that Mr. Presby's share of the leave is not diminished to nothing over the next ten years. As we held above, the attempted cash pay out was inappropriate. Nevertheless, there is an appropriate alternative means to reach the trial court's goal.
 {¶ 14} The Montana Supreme Court was faced with a case on point where accumulated leave could not be cashed out but could be added to the husband's term of service for purposes of calculating his retirement benefits. In re Marriage of Meeks
(1996), 915 P.2d 851. The court held that because the husband could not convert his leave into cash at any time, the trial court properly refused to classify the leave as a distinct marital asset subject to present cash payment. The court explained that the leave would be included in computing the pension, which the wife would share. Still, the Montana Supreme Court modified the coverture formula imposed upon the pension by the trial court so that the accumulated leave at issue was added to the years of service during marriage factor. We agree with the justness of this result.
 {¶ 15} For clarity, we note that the standard coverture formula applied to the facts of this case could look like this: 13.83 (years of service accumulated during marriage) divided by 30 (total years of service in pension) multiplied by 50% (the equitable division) equals .2305, which means Mr. Presby could get 23.05% of the pension at the time of payout if the standard coverture formula were used.
 {¶ 16} Under a modified coverture formula, the formula is the same except the years of service during the marriage factor will be increased to reflect the 883.3 hours of sick leave, which the trial court found to be marital without objection. These hours should be converted to days as per Ms. Presby's employer's schedule. This offers Mr. Presby some protection from a decreased future pension payout if Ms. Presby must use some of her sick leave. He will also benefit from any remaining sick leave because the pension will pay out more based upon extra service credit.
 {¶ 17} For the foregoing reasons, the decision of the trial court is hereby reversed, the cash award is vacated as it is not supported by any evidence, and this case is remanded. On remand, the trial court shall ensure the QDRO uses a modified coverture formula, adding the marital portion of the accumulated sick leave onto the years of service during marriage factor of the equation.
Waite, P.J., concurs.
DeGenaro, J., concurs.